Burl P. Glover v. Commissioner.
Glover v. Commissioner
Docket No. 55083.
United States Tax Court
T.C. Memo 1957-45; 1957 Tax Ct. Memo LEXIS 207; 16 T.C.M. (CCH) 203; T.C.M. (RIA) 57045; March 18, 1957
*207 Held: Amounts credited by a finance company to the "dealer's reserve" account of petitioner, an accrual basis automobile dealer, were income to petitioner in the year credited. W. S. Miller, Jr., Esq., for the petitioner. Robert B. Wallace, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in petitioner's income tax for the years 1949, 1950, and 1951, and addition to tax for the year 1951, as follows: Addition to Tax
Year
Deficiency
Sec. 294(d)(2)
1949
$1,749.10
1950
5,041.33
1951
2,211.88
$331.34
Of the several adjustments and determinations made by respondent, only one is in dispute. The sole issue is whether the entire amount credited to petitioner's "dealer's reserve" with a finance company during each of the taxable years was income to petitioner in the year of accrual. All of the facts were stipulated and are so found and incorporated herein by this reference. [Findings of Fact] During all of the years involved, petitioner operated a retail automobile agency known as Glover Motors, a sole proprietorship. The books of account were kept on *208 a calendar year accrual basis, and income tax returns filed on an accrual basis for all years involved. Petitioner and his wife filed joint income tax returns for each of the taxable years with the collector of internal revenue for the district of Arkansas. During all of the years involved, petitioner maintained a financing agreement with Universal C.I.T. Credit Corporation for the financing of new and used car sales. The agreement provided as follows: "TO UNIVERSAL C.I.T. CREDIT CORPORATION: "1. You propose to buy from us, on the basis stated in this agreement, paper acceptable to you covering new and used cars; except as provided in this agreement said paper will be assigned to you without recourse as to the customer's obligation of payment, except that paper covering commercial cars used for long distance hauling, commercial cars of more than two tons capacity, busses, cars used for taxi, jitney, 'drive yourself' service, or cars sold to relatives or employees will bear our full recourse endorsement; in such cases you may make any necessary correction in our endorsement and paragraphs 2 and 3 shall not apply. "2. We will purchase from you each repossessed or recovered car *209 tendered at our place of business within 90 days after maturity of the earliest instalment still unpaid. The purchase price payable on demand shall be the unpaid balance due on the car, limited as stated in paragraph 3. Until paying you we will store the car at our risk and expense and as your property and will deliver it to you on demand. "3. We shall have no responsibility as to converted or confiscated cars until they are repossessed or recovered and tendered as above. You will allow us the cost of repairing actual direct collision damage necessitating repossession; the allowance is not to exceed the unpaid balance on the car after deducting both the 'as is' value and the amount of any deferred certificate or other special holdback relating to the car. Where the resale value of the repaired car (excluding overhead and salesman's commissions) exceeds the unpaid balance, the excess will be deducted from the collision allowance. "4. Your rate charts will include, for our protection, reserves as outlined in your reserve arrangement effective at the time paper is purchased by you. No reserves are to be set up in respect of short term note, demonstrator or other special plans announced *210 by you from time to time, except as may be agreed upon hereafter in writing. Three times in each twelve-month period, if we are not then indebted to you, you will pay us our accumulated reserves in excess of 3% of the then aggregate unpaid balances on paper purchased from us. If you stop buying our paper, you may hold and apply all reserves until liquidation of all paper purchased from us is completed. "5. If you refund any part of the service charge because an account is prepaid, we agree to pay you the same percentage of all reserves credited to or paid us on the account as the amount of service refund bears to the amount of the original charge exclusive of insurance premium. "6. If, in reselling repossessed passenger cars which we purchase from you, covered by paper sold to you in any twelve-successive-month period, we incur a loss (excluding overhead and salesman's commissions) in excess of 3% of the volume of our paper sold you during said period, plus the amount of our reserves for said period, you shall reimburse us for such excess, provided we have resold the cars for their reasonable value within 90 days after delivery to us. We shall credit total profits on resales against *211 total net losses. This paragraph applies only (a) if we have sold you paper covering at least 100 cars during such period, (b) if we perform all of our obligations to you, and (c) if, before incurring such excess losses, we give you written notice of the offered price of each car and the opportunity to resell it. "7. We will be under full recourse liability to you on the assignment of paper covering equipment other than described in paragraph 1 above notwithstanding the language of such assignment or if in connection with any transaction covering equipment described in paragraph 1 we make any settlement with a customer without your written consent, if we disclose any part of this agreement to the customer, if we breach any provision of the assignment to you, and on paper which bears or in connection with which you receive our guaranty. In any such cases you may make any necessary changes in our endorsements or assignments to express such liability. If we are in default to you under this or any other agreement or obligation at the time of any repossession, cars may be tendered by registered mail notice sent to the last address shown by your records, instead of as provided in paragraphs *212 2 and 3 above; if we are not then doing business as a going concern, tender of repossessed cars is waived. In case we fail to purchase repossessed cars we will be responsible for any deficiency incurred by you in the resale of such repossessed cars at public or private sale held with or without notice, at which you may purchase. "8. This agreement shall apply to all paper hereafter sold to you as above stated, irrespective of transfers between or extensions of time to customers and until the paper is liquidated, unless otherwise specifically agreed in writing with respect to the particular paper. No waiver or change of any part of this agreement shall be binding on you unless evidenced by writing signed by one of your officers. "9. The purchase of paper by you from us shall constitute acceptance by you of this agreement, which shall cover all such purchases. This agreement shall inure to and bind our respective successors and assigns and any present and future company affiliated with you which may transact business hereunder." During the years involved, Universal C.I.T. Credit Corporation maintained a reserve account on its books in the name of petitioner, and petitioner maintained *213 on his own books an account or accounts reflecting the credits accruing on the assignment of contracts to the finance company under the terms of said agreement. At the beginning of 1949, the finance reserve account balance carried forward was $2,702.15. Credits by the finance company in 1949 totalled $9,210.41. Three per cent of customer notes outstanding held by the company at December 31, 1949 equalled $3,885.71. Petitioner computed the finance reserve income reported in his income tax return for 1949 as follows: Credits carried forward from 1948
$ 2,702.15
Credits to reserve account - 1949
9,210.41
$11,912.56
Less: Portion of reserve not available
for withdrawal - 3% of outstanding
notes
3,885.71
Reported per tax return
$ 8,026.85
Credits to the reserve account by the finance company in 1950 totalled $15,727.36. Three per cent of customer notes outstanding at December 31, 1950 equalled $7,601.07. Petitioner computed the finance reserve income reported in his income tax return in 1950 as follows: Credits carried forward from 1949
None
Credits to reserve account - 1950
$15,727.36
Less: Portion of reserve not available
for withdrawal - 3% of outstanding
notes
7,601.07
Reported per tax return
$ 8,126.29
*214 Petitioner concedes that $3,885.71, excluded from income in 1949, should have been carried forward to 1950 under the method of computation used by petitioner, so that the amount reported as finance reserve income in 1950 under petitioner's method of computation should have been $12,012. Credits to the reserve account in 1951 totalled $15,806.43. Three per cent of outstanding notes at December 31, 1951 equalled $7,952.41. Petitioner computed the finance reserve income reported in his income tax return in 1951 as follows: Credits carried forward from 1950
$ 7,601.07
Credits to reserve account - 1951
15,806.43
$23,407.50
Less: Portion of reserve not available
for withdrawal - 3% of outstanding
notes
7,952.41
Reported per tax return
$15,455.09
For the taxable years petitioner reported the following amounts of net profit from the operation of his automobile agency and total net profit from all sources: Profit on
Total
Year
Operations
Net Profit
1949
$ 5,308.31
$15,285.99
1950
28,692.69
39,296.05
1951
12,653.49
31,923.73
Petitioner deducted the following amounts of bad debt expense for the taxable years: Year
Bad Debt Expense
1949
$1,897.74
1950
7,393.20
1951
4,167.05
*215 Respondent determined that the portion of the reserve withheld by Universal C.I.T. Credit Corporation in each of the taxable years was includible in petitioner's income for those years. [Opinion] This Court has consistently held that amounts credited by a financing institution to the "dealer's reserve" account of an accrual basis automobile or trailer dealer are income to the dealer in the year credited. See ; , revd. (C.A. 4, 1956), ; (Oct. 31, 1956); Texas Trailercoach, Inc. (Dec. 21, 1956); West Pontiac, Inc., 27 T.C. - (Jan. 31, 1957). Respondent contends that the facts in the instant case bring it within our previous decisions. Petitioner argues that he had no right to the portion of the reserve withheld by the finance company because the company could have successfully resisted any claim to those amounts. After thoroughly reviewing once again the pertinent authorities dealing with this problem, we conclude that the prior decisions of this Court correctly state the law applicable *216 to the facts here presented. We therefore hold that the portion of dealer's reserve which was withheld by Universal C.I.T. Corporation in each of the years involved was includible in petitioner's taxable income for such years. Among the authorities cited by petitioner is , in which a view contrary to the holding herein was expressed by the Circuit Court of Appeals. With due deference to that Court, we nevertheless feel compelled to adhere to our previous decisions, and we therefore respectfully decline to follow See Arthur L. Lawrence, 27 T.C. - (Jan. 25, 1957). Decision will be entered under Rule 50.